# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7448 | **DATE** | 6/18/2003 |
| **CASE TITLE** | Livorsi Marine, Inc. vs. Nordskog Publishing, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted. Status hearing set for 7/17/03 at 8:45 A.M. is stricken. Any other pending dates are stricken. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | JUN 19 2003 | date docketed | | 20 |
| ✓ | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| | | courtroom deputy's initials | | date mailed notice | | |
| TH✓ | | | | | | |

U.S. DISTRICT COURT
CLERK
03 JUN 18 PM 1:14
Date/time received in central Clerk's Office / mailing deputy initials

| | |
|---|---|
| LIVORSI MARINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 02 C 7448 |
| v. | ) |
| | ) |
| NORDSKOG PUBLISHING, INC. and | ) |
| NORDSKOG PERFORMANCE PRODUCTS, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**DOCKETED**
JUN 1 9 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

After a series of communications, Livorsi Marine, Inc. ("Livorsi") brought an action for declaratory judgment against Nordskog Publishing, Inc. and Nordskog Performance Products, Inc. (collectively, "Nordskog") Livorsi claims that Nordskog, owner of United States Patent No. 6,353,781 (the "'781 patent"), has accused Livorsi and its primary supplier of infringing the '781 patent. Livorsi claims that Defendants' action have induced a reasonable apprehension of an infringement suit. Livorsi seeks a declaration that it does not infringing the patent and that the patent is invalid. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of a justiciable controversy. Because the Court does not have subject matter jurisdiction, Defendants' motion is granted.

### STANDARDS

A Rule 12(b)(1) motion to dismiss tests the federal jurisdiction of a complaint. *See* Fed. R. Civ. P. 12(b)(1). It is well settled that federal jurisdiction is limited to cases of "actual controversy." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 1069, 137 L.Ed.2d 170 (1997); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). This requirement, which the Declaratory Judgment Act explicitly acknowledges, *see* 28 U.S.C. § 2201, has its roots in Article III of the Constitution. *See* U.S. Const. art. III, § 2, cl. 1.; *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75,

116, 67 S.Ct. 556, 577, 91 L.Ed. 754 (1947) (Douglas, J., dissenting in part). In order for an actual controversy to exist, there must be a "definite and concrete" dispute – one that touches the "legal relations of parties having adverse legal interests." *Aetna*, 300 U.S. at 240-41, 57 S.Ct. at 464. Courts, in determining the question of federal jurisdiction in declaratory judgment actions, must evaluate whether an actual controversy exists at all stages of the litigation, including the action's filing date. *Arizonans for Official English*, 520 U.S. at 67, 117 S.Ct. at 1069; *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("later events may not create jurisdiction where none existed at the time of filing"); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).[1]

Plaintiffs bear the burden of proving the existence of subject matter jurisdiction. *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). In analyzing a Rule 12(b)(1) motion, the Court may look beyond the pleadings. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Int'l Harvester Co.*, 623 F.2d at 1210. The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Long*, 182 F.3d at 554; *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980).

## BACKGROUND

### I.     Defendants' Initial Letters To Livorsi

On July 16, 2002, Defendants sent a letter notifying Livorsi of the existence of their '781 patent and inviting Livorsi to engage in licensing negotiations with them regarding GPS products that Livorsi sold:

> Please also see the advertisement for Nordskog Performance Products in the same August 2002 issue which announces that our GPS speedometer is patented. Perhaps you have been unaware of this previously. We do have a patent for the marine GPS Speedo.
>
> Enclosed is a copy of the United States Patent . . . .
>
> We would be agreeable to entering into a licensing agreement with

---

[1] Whether an actual controversy exists is a matter of substantive law. *Id.* Because this case arises under patent law, the Court must apply the substantive law of the Federal Circuit. *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002). With respect to procedural issues not unique to patent law, the Court will apply Seventh Circuit precedent. *Id.*

> Livorsi Marine for your use in manufacturing and distributing your
> GPS marine gauges. [Nordskog] would be open to such an
> arrangement[,] which could include a one-time licensing fee plus a
> royalty on each unit marketed.
>
> Kindly review the enclosed and consider our request and let me
> know your willingness to proceed to an agreement that would be
> mutually beneficial for [Nordskog] and Livorsi.

(R. 13-1, Defs.' Mem., Ex. 1.)

On August 2, 2002, Defendants sent Livorsi a follow-up letter stating that Defendants had

contacted other companies regarding infringement, requesting information from Livorsi

regarding other potential infringers of the '781 patent, and expressing Defendants' continued

desire to engage in licensing negotiations with Livorsi:

> I want you to know that in NO way has your company been singled
> out by us as the only manufacturer of GPS Speedometers we have
> or will contact concerning *possible patent infringement* and
> potential licensing arrangements . . . .
>
> However we are only aware of a couple of companies that are
> using GPS Speedos and if you can let us know the names of all the
> businesses that you are aware of who are selling units that *may
> also infringe* upon our patent, we would be very appreciative, and
> this may enable us to reduce licensing and royalty fee amount that
> we would be requesting . . . should you desire to proceed into a
> contractual relationship with us.
>
> Kindly respond to this and the previous letter to let us know your
> desires and intentions, Mike, so that we may proceed into some
> sort of reasonable and mutually beneficial arrangement. Let us
> know the direction you would like to take in the matter. It is our
> opinion that a licensing and royalty fee would be most appropriate
> and provide us both with the sales and revenues to grow our
> respective businesses.

(R. 13-1, Defs.' Mem., Ex. 2 (emphasis added).)

## II.    Livorsi's Response To Defendants' Letters And Defendants' Subsequent Reply

On August 14, 2002, Livorsi's patent counsel responded to Defendants' letters. (R. 13-1,

Defs.' Mem., Ex. 3.) Livorsi indicated that it had completed an initial review of the '781 patent.

(*Id.* ¶ 3.) Livorsi also requested additional information. (*Id.*) To "begin evaluating

[Defendants'] request to enter into a licensing arrangement," Livorsi needed to know which

products Defendants believed infringed the '781, and which patent claims these products

3

allegedly infringed. (*Id.*)

Defendants' patent counsel replied on September 18, 2002. (R. 13-1, Defs.' Mem., Ex. 4.) Defendants pointed Livorsi to claims 1-4 and 7 of the '781 patent and to Livorsi's GPS speedometers. (*Id.* ¶ 2.) Defendants also acknowledged that they previously proposed licensing negations with Livorsi. (*Id.* ¶ 3.)

## III.     Defendants' Communications With Auto Meter

On August 5, 2002, Defendants sent a letter to Auto Meter, a company that manufactures Livorsi's marine speedometer. (R 13-1, Defs.' Mem., Ex. 5.) Defendants related that they manufactured and sold a GPS marine speedometer that was authorized by the '781 patent. (*Id.* ¶ 1.) Defendants further expressed that "had reason to believe" that Auto Meter was infringing the '781 patent and demanded that Auto Meter cease and desist any infringement:

> Our client has reason to believe that Auto Meter is manufacturing
> and selling a GPS marine speedometer. If so, we ask that you
> cease and desist any infringement of the '781 patent and advise as
> to the quantity and dollar amount of any prior sales of any
> infringing speedometers since the patent was granted on March 5,
> 2002.

(*Id.* ¶ 2.)

Auto Meter responded to Defendants' letter on August 12, 2002. (R. 13-1, Defs.' Mem., Ex. 6.) Auto Meter related that its products differed from the claims covered by the '781 patent and that its products were based on prior art. (*Id.* ¶ 2.)

On August 30, 2002, Defendants replied, explaining that Auto Meter's products could not have been based on the prior art Auto Meter cited in its August 12 letter. (R. 13-1, Defs.' Mem., Ex. 7 ¶ 2.) Defendants again demanded that Auto Meter cease and desist any infringement of the '781 patent and that it advise Defendants of any prior sales of infringing speedometers. (*Id.* ¶3.) Defendants also requested that Auto Meter contact them should Auto Meter become interested in obtaining a license. (*Id.*)

## IV.     Livorsi's Action For Declaratory Judgment

Based on Defendants' above-related actions, Livorsi alleges that it feared Defendants would bring an infringement suit against Livorsi. (R. 1-1, Compl. ¶ 11.) As a result, Livorsi

filed this action for declaratory judgment. (*Id.*)

## ANALYSIS

**I.     Declaratory Judgment Jurisdiction In Patent Disputes**

In patent cases, courts apply a two-part test to determine whether an actual controversy

exists. *See, e.g., Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052

(Fed. Cir. 1995). Specifically, the Court must find both (1) an explicit threat or other action by

the patent owner creating a reasonable apprehension of an infringement suit on the part of the

declaratory plaintiff, and (2) present activity constituting infringement or concrete steps being

taken with the intent to conduct such activity. *Id.* at 1052. The parties agree that Livorsi has

satisfied the second part of the applicable test. Therefore, the only issue is whether Defendants

created a reasonable apprehension of an infringement suit in Livorsi through an explicit threat or

other action.

To satisfy the first element of the test, a plaintiff must objectively establish that the

patentee's conduct has risen "to a level sufficient to indicate an intent to enforce its patent."

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887-88 (Fed. Cir. 1992). Where there is no express

charge of infringement, a court must look to the totality of the circumstances, evaluated as of the

filing date. *Id.* at 888 (quoting *Arrowhead Indus. Water, Inc.*, 846 F.2d at 736). A court will

evaluate the "totality of the circumstances" because a party "should not be subject to

manipulation by a patentee who uses careful phrases in order to avoid explicit threats." *Phillips*

*Plastics Corp.*, 57 F.3d at 1053.

**II.    Livorsi Has Failed to Prove A Reasonable Apprehension of An Infringement Suit**

**A. Livorsi and Defendants were still Negotiating when Livorsi Filed Suit**

An actual controversy, in the context of licensing negotiations, does not exist until

licensing negotiations have broken down. *Id.* (affirming dismissal of declaratory judgment action

where the plaintiff filed suit rather than responding to defendant's request for information that it

needed to "put together a reasonable offer of a licensing proposal"). Defendants and Livorsi

agree that licensing negotiations did not break down until February 2003 when Livorsi finally

5

served Defendant. (R. 17-1, Pl.'s Resp. at 1, 4; R. 13-1, Defs.' Reply at 2-3.) But, Livorsi filed suit on October 16, 2002, when the parties were still engaged in licensing negotiations. (R. 17-1, Pl's. Resp. at 1.) As Livorsi admitted, "neither party had expressly rejected all possibility of a license at the time Livorsi filed this action." (*Id.*) Livorsi also admits waiting to serve Defendants for over three months because it was still engaged in "last-ditch efforts to resolve" the matter. (*Id.* at 4.) When parties are still engaged in licensing negotiations as of the filing date of an action for declaratory judgment, there can be no actual controversy. *See Phillips Plastics Corp.*, 57 F.3d at 1053; *see also Oce-Office Sys., Inc., v. Eastman Kodak Co.*, 805 F.Supp. 642, 646-47 (N.D. Ill. 1992) (requiring one party to have terminated negotiations for an actual controversy to exist). The instant case, then, does not present an actual controversy. It seems instead that Livorsi preferred to file suit rather than respond to Defendants' September 18, 2002 letter.

### B. The Circumstances do not Support Reasonable Apprehension of an Infringement Suit

Even if Defendants and Livorsi were no longer in licensing negotiations when Livorsi filed this suit, Defendants correctly assert that their letters to Livorsi did not objectively generate reasonable apprehension of an infringement suit. (R. 13-1, Defs.' Mem. at 8.) A reasonable apprehension of an infringement suit "requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Phillips Plastics Corp.*, 57 F. 3d at 1053-54.

In the instant case, an objective evaluation of the communications between Livorsi and Defendants shows that Plaintiff's fear of suit was unreasonable. Defendants' first letter informs Livorsi of the '781 patent's existence while inviting Livorsi to engage in licensing negotiations. (R. 13-1, Defs.' Mem., Ex. 1.) Defendants' second letter continues to encourage negotiations. (R. 13-1, Defs.' Mem., Ex. 2 ¶ 3.) Defendants' third letter, authored by their patent counsel,[2]

---

[2] That Defendants' patent counsel authored a letter does not elevate the nature of the dispute where, as here, Defendants were responding to a letter from Plaintiff's patent counsel. *See Shell Oil Co.*, 970 F.2d at 888.

identifies the patent claims and Livorsi's products at issue, does not threaten an infringement suit,[3] and continues to propose licensing negotiations. Defendants' letters, which are simply suggestions that the parties engage in licensing negotiations, are insufficient on their own to create an actual controversy. *See Phillips Plastics Corp.*, 57 F.3d at 1053.

The closest Defendants come to asserting infringement by Livorsi is to inform Plaintiff that it "has not been singled out . . . concerning *possible* patent infringement . . ." and to request information regarding other businesses that "*may* also infringe upon [the '781] patent . . . ." (R. 13-1, Defs.' Mem., Ex. 2 ¶¶ 1, 2 (emphasis added).) This language does not constitute an express charge of infringement. *See Phillips Plastics Corp.*, 57 F.3d at 1052 (affirming dismissal of suit where the defendant's letter to the plaintiff stated that certain of the plaintiff's products were "covered by" its patent); *Shell Oil Co.*, 970 F.2d at 888-89 (holding patentee's statements were insufficient to create a reasonable apprehension of an infringement suit despite statements that the alleged infringer's activities "fall within," are "covered by," and are "operations under" the patent). Without an express charge of infringement by Defendants, Livorsi must prove that the totality of the circumstances created a reasonable apprehension of an infringement suit. *See Shell Oil Co.*, 970 F.2d at 887-88. Livorsi has not met this burden.

To bolster its claim that Defendants' actions induced a reasonable apprehension of suit, Livorsi contends that Defendants' communications with Auto Meter[4] generated within Livorsi a reasonable apprehension of an infringement suit. These exchanges with Auto Meter, however, are insufficient to support Livorsi's contention, given that Livorsi and Defendants were engaged

---

[3] Because there was not an explicit threat of litigation, the facts before the Court differ from those in *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 809 (Fed. Cir. 1995). In *EMC Corp.*, the defendant's president first sent a letter to the plaintiff inviting it to engage in licensing negotiations. *Id.* When the plaintiff failed to respond, the defendant's president sent a subsequent letter informing the plaintiff that his company intended to turn the matter over to its patent counsel "for action." *Id.* Although the Federal Circuit believed an actual controversy existed, it upheld the district court's decision to exercise its discretion to decline jurisdiction to entertain the suit. *Id.* Here, Defendants never threatened any action.

[4] Whether Livorsi was aware of Defendants' contact with Auto Meter is unclear from the record. For purposes of this motion, however, this court has found all factual inconsistencies in favor of the plaintiff. *Neiman*, 619 F.2d at 1190.

in licensing negotiations. Under the circumstances, Livorsi must prove more than that Defendants sent cease and desist letters to a third party manufacturer.

## CONCLUSION

Livorsi has failed to establish that an actual controversy existed at the time that it filed its Complaint. Instead, the record shows that Livorsi did not have a reasonable apprehension of an infringement suit since the parties' licensing discussions had not yet broken down. Accordingly, Defendants' motion to dismiss is granted.

DATED: June 18, 2003         ENTERED

                             AMY J. ST. EVE
                             United States District Judge